## ISBELL v. WHALEN.

Where it cannot be assumed the verdict would have been the same had certain evidence been excluded, error, if any, in admitting it, is reversible.

A copy of a book entry is inadmissible; no adequate reason being shown for not producing the original.

In an action for the price of sand, entries in books kept by men hauling sand for plaintiff and receiving half they earned, and intended to keep track of their compensation, were inadmissible against defendant, without proper foundation being laid by calling the men who hauled the sand or satisfactorily accounting for their absence.

A copy of an incompetent writing is itself incompetent.

(Opinion filed, May 24, 1910.)

Appeal from Circuit Court, Pennington County. Hon. LEVI McGEE, Judge.

Action by J. H. Isbell against Michael Whalen. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and a new trial ordered.

*H. E. Edwards,* for appellant. *Boyd & Soule,* for respondent.

HANEY, J. This is an action to recover for sand sold to the defendant by the plaintiff at the agreed price of $1.20 per load. Defendant admitted the delivery of 48 loads at the agreed price, but alleges payment of all except four loads, amounting to $5, for which sum and costs he offered to have judgment entered. The cause was commenced before a justice of the peace, appealed to the circuit court, and there tried de novo. A verdict

in favor of the plaintiff for $61 having been rendered, judgment entered thereon, and defendant's application for a new trial denied, this appeal was taken from the judgment and order refusing a new trial.

The plaintiff, as a witness on his own behalf, having stated the terms of the contract as alleged in the complaint, testified: "I had two men driving my teams. They delivered the sand. They got half what they earned. I furnished the teams and they did the work. The amount I am claiming is from June 20th. I have memorandums as to how many loads were delivered from June 20th. Yes; I know that slip is Exhibit A. It came to me in the ordinary course of my business under this contract. I know whose handwriting it is. The party who wrote it gave it to me. I saw him make it out. It is for sand delivered to Whalen by Sam Fielding for me. I have no record except that." Plaintiff then offered Exhibit A, to which defendant objected as immaterial and hearsay, that the proper foundation had not been laid, and that it was secondary evidence, which objection was overruled. Upon the same foundation similar exhibits marked "B," "C," "D," "F," "G," "H," "I," and "J" were received over the same objection. Exhibit A is as follows:

"Mike Whalen.

| | |
|---|---|
| 6-20 to 1 load sand........................ | $1 00 |
| 6-21 to 1 load sand........................ | 1 00 |
| 6-24 to 1 load sand........................ | 1 00 |
| 6-26 to 2 loads sand........................ | 2 00 |
| | $5 00" |

After the introduction of these exhibits, plaintiff testified: "Q. I ask you whether or not you were present at all times or saw these loads of sand delivered? A. I was, most of them; yes, sir. I have these memorandums in a book or account of the same. I sue this account for June 20th, because the sand was paid for up to that time. My book shows that the book referred to is Exhibit K so far as it related to this case. I made the entries in that book after they had turned in their slips, and this, together with the slips, is the only method I have of keeping the record of the

transaction of that of my regular business in connection with the slips that were handed to me. The entries were made about the time the slips were handed to me, or soon thereafter." Thereupon Exhibit K was offered, to which defendant objected on the ground that the evidence was hearsay, no proper foundation laid, that it was a self-serving declaration, and did not purport to be a book of original entry. This objection was overruled. Exhibits K appears to be a recapitulation of the preceding exhibits, except it does not contain the items found in Exhibits A and D and the price per load is $1,20, instead of $1. Following the introduction of Exhibit K the plaintiff testified: "The reason some of the slips in evidence are not in the book, because I didn't get them until after I had started the bill in the book and did not enter them for the reason that the date would be behind the starting of the account in the slip and I kept the slips. Those entries were made by me. Exhibits A and D were not in the book. Whalen has not paid anything on this sand delivered since June 20th." Thereupon defendant moved to strike out all the exhibits because no proper foundation was laid, the same not having been proven by persons who made, the writings and not made at or near the time of the transaction, which motion was denied. On cross-examination the plaintiff testified as follows: "I have some independent recollection of the deal of this sand outside of the statements I have testified to. I could not say exactly when Mr. Fielding hauled sand. The memorandum will show. I think they are correct. I think the sand was hauled on those dates shown by slips. I do not know whether the sand was hauled on Sunday or not during the month of June. If any was hauled on Sunday, I did not know it. I was not with them every day. I think Exhibit D is correct. Three loads were hauled on the 31st day of June as shown by Exhibit D. I saw Fielding write Exhibit A, saw him make that from his book. The writing on the back is mine. I wrote that when he turned it over to me, so I could tell who made the slip. I can't say what day it was. I don't know what day of the week June 24th comes on. Exhibit I is in the handwriting of E. T. Weiser. It was made on this day of or soon after, because he

quit work when he turned in this bill. He made it from his book. He kept it on his book and he copied it on that slip and turned it over to me. That is my hand writing across the top. I wrote his name there. He made it. I don't know the date it was done. I think it is correct. I don't think I looked at his book when he made that copy. Q. Mr. Isbell, I will call your attention to Exhibits A to K, inclusive. You may state whether or not any of those exhibits were made on the day that the sand was delivered and the charges made thereon as shown. A. It is a copy from their books that they kept. Each one had a book. When they got through with a job or quit, they turned them slips over to me so I could settle with the parties. I do not know where Fielding is now. William Christianson is at Piedmont. Dick Hornby is in Iowa. C. C. Arrison is at Piedmont. Mr. Barr lives right here in town. Ralph McMahon is working for his father in Rapid City. E. T. Weiser is working for John B. Henry in Rapid City. Frank Sullivan is down here on a ranch about 18 miles." The defendant introduced testimony on the part of himself and sundry witnesses to the effect that the amount of sand claimed by the plaintiff was not delivered, and that all the sand delivered had been paid for except five loads, for which he tendered judgment of $5 and costs.

As the issue regarding the number of loads delivered was sharply contested, as there was no evidence to support the plaintiff's claim other than his own testimony and the exhibits, and as it is evident the plaintiff was unable to state from personal knowledge how many loads were delvered, it cannot be assumed the verdict would have been the same if the exhibits had been excluded. Consequently, if error was committed in overruling defendant's objections and motion to strike out, such error was prejudicial and reversible. None of the exhibits should have been received. Those from A to J, inclusive, were copies, and no adequate reason was shown for not producing the original evidence. Nor would the original writings have been competent in the absence of a proper foundation. What were the originals? Entries by third parties made in their own interest; entries in

books kept by men who were hauling sand and receiving half they earned; declarations, not under oath, intended to establish claims for compensation by the persons making them. They were not entries in books belonging to the plaintiff. They would not be admissible against the plaintiff in an action by his employes for compensation on the foundation laid in this action. The fundamental defect was the failure of the plaintiff to produce the testimony of the men who delivered the sand. It affirmatively appears he knew where all of them resided except one and there is nothing to show that one's testimony might not have been procured by the exercise of reasonable diligence. It may have been slightly inconvenient to procure the best evidence, but it was procurable, and no reason whatever was shown for introducing the unverified statements of men who were financially interested in every load of sand mentioned therein. Exhibit K was merely a recapitulation of the other exhibits. Of course, a copy of an incompetent writing is itself incompetent.

The judgment of the circuit court is reversed, and a new trial ordered.